**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001316
15-NOV-2016
09:37 AM**

NO. CAAP-14-0001316

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


TERESA L. MEDINA, Plaintiff-Appellant,
v.
FCH ENTERPRISES, INC., DBA ZIPPY'S RESTAURANTS,
Defendant-Appellee,
and
DOE DEFENDANTS 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-0470)


MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Ginoza, JJ.)

Plaintiff-Appellant Teresa L. Medina (**Medina**) appeals from the "Final Judgment" entered on October 29, 2014 in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Medina argues that the circuit court erred in granting summary judgment in favor of Defendant-Appellee FCH Enterprises, Inc., DBA Zippy's Restaurants (**Zippy's**) because (1) the declaration of the Employee Relations Manager for Zippy's, May Goya (**Goya**), was based on inadmissible hearsay and (2) the circuit court failed to view the evidence in the light most favorable to Medina.

**I. BACKGROUND**

Medina was hired as a waitress at Zippy's on June 29, 2007. Medina claims that between 2007 and 2009 she "blew the whistle" on her coworkers at Zippy's for engaging in the

---

[1] The Honorable Virginia Lea Crandall presided.

following indiscretions: (1) improperly using Medina's key card; (2) not returning a customer's wallet; and (3) making inappropriate comments about Medina's age.

On January 23 and 31, 2010, Medina and her coworker, Michael Nakila (**Nakila**), had verbal altercations at work, for which Medina received a warning that another incident would result in her termination. Medina alleges that she "blew the whistle" on Nakila for "his violation of Zippy's policies and procedures against workplace harassment and violence" and for "apparently being under the influence of and using illegal substances while on the job." Medina also alleges that she "blew the whistle" in February 2010 when she reported Goya "for failing to enforce Zippy's policies and procedures against workplace harassment and violence" after her verbal altercation with Nakila and when she was obtaining a temporary restraining order against Nakila.

On October 21, 2010, Medina was involved in another verbal altercation at work with her coworker, Jeanette Olivera (**Olivera**). Zippy's asserts that because of Medina's prior warnings that another incident would result in termination, Zippy's terminated Medina's employment on November 2, 2010.

On April 28, 2011, Medina filed an administrative charge of discrimination with both the Hawai'i Civil Rights Commission and the Equal Employment Opportunity Commission, asserting, "if not for my age, sex, and my opposition to what I believed to be discrimination, I would not have been terminated." On September 21, 2011, the Hawaii Civil Rights Commission issued a right to sue letter that informed Medina of its recommendation that "the case be closed on the basis of no cause" and allowed Medina the right to pursue her claims in court.

On February 17, 2012, Medina filed a complaint in circuit court alleging that the decision by Zippy's to terminate her employment violated Title VII of the Civil Rights Act of 1964, violated the Age Discrimination in Employment Act of 1967, violated the Hawai'i's Whistleblower's Protection Act (**HWPA**), constituted an intentional infliction of emotion distress, was a

2

breach of its employment contract with Medina, and violated principles of promissory estoppel.

Based on Medina's claims for violations of federal law, Zippy's removed Medina's action to the United States District Court for the District of Hawai'i (**U.S. District Court**). On June 19, 2013, the U.S. District Court granted summary judgment in favor of Zippy's on all of Medina's claims, except her HWPA claim. Having declined to exercise supplemental jurisdiction over Medina's State of Hawai'i (**State**), HWPA claim, the U.S. District Court remanded Medina's HWPA claim back to the circuit court for further proceedings.

On August 5, 2014, Zippy's filed a motion for summary judgment in circuit court on Medina's remaining HWPA claim (**Zippy's MSJ**). The Zippy's MSJ argued that summary judgment in its favor was proper because, even if Medina had engaged in HWPA protected conduct during her time working at Zippy's, she would not be able to prove a causal connection between her complaints and her 2010 termination. Zippy's argued that it had a legitimate reason for terminating Medina, namely "her repeated confrontations with co-employees." Zippy's provided three declarations and several exhibits in support of its motion.

Medina filed her opposition to the Zippy's MSJ on September 3, 2014. Medina's opposition did not present any additional evidence and did not challenge the admissibility of the affidavits and exhibits that Zippy's submitted in support of its motion. Instead, Medina's opposition merely reiterated allegations from her complaint:

> After [Medina] complained to her supervisor, Goya, about illegal work place violence and harassment, including the fact that she petitioned for and was granted a [temporary restraining order] against [Nakila], [Zippy's] wrongfully terminated [Medina] on a pretext that she created a "hostile work environment".
>
> [Zippy's] argues that "Medina cannot use the HWPA to essentially restate a claim for alleged retaliation under Title VII or the ADEA.["] [Zippy's] goes on to argue that [Medina's] HWPA claim is essentially the "same thing" as her retaliation claim already adjudicated by the U.S. District Court. And, since all of [Medina's] Title VII and ADEA claims were dismissed, [Medina's] HWPA should similarly be dismissed by this court. [Medina] submits that Judge Seabright's ruling has no bearing on the HWPA claim except to suggest that by remanding the HWPA claim back to State

court the U.S. District Court determined that the HWPA claim was viable.

(Internal citations omitted.)

The circuit court held a hearing on the Zippy's MSJ on September 11, 2014.[2] On October 22, 2014, the circuit court entered its order granting the Zippy's MSJ. The circuit court's order concluded, "[Zippy's] has shown that there is no genuine issue of material fact that [Zippy's] terminated [Medina] for legitimate business reasons. [Medina] is unable to show a genuine issue of material fact that there is a causal connection between the alleged protected activity and the termination of [Medina's employment]." On October 29, 2014, the circuit court entered its Final Judgment.

Medina filed her notice of appeal on November 24, 2014.

## II. STANDARD OF REVIEW

"We review a circuit court's award of summary judgment de novo under the same standard applied by the circuit court." Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 12, 346 P.3d 70, 81 (2015) (quoting Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 376, 14 P.3d 1049, 1057 (2000)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party.

Adams, 135 Hawai'i at 12, 346 P.3d at 81 (citations, internal quotation marks, and brackets omitted) (quoting Shoppe, 94 Hawai'i at 376, 14 P.3d at 1057).

## III. DISCUSSION

### A. Admissibility of Goya's Declaration

Medina argues that the circuit court erred in granting the Zippy's MSJ because the declaration of Goya was based on inadmissible hearsay given that Goya "was not present during the incident" for which Zippy's claims Medina's employment was

---

[2] The transcript from the hearing is not part of the record on appeal.

4

terminated. Goya's declaration and the exhibits attached to her declaration established that Goya was the person who ultimately decided to terminate Medina based on her "performance issues."

The Hawai'i Supreme Court has previously held that, absent plain error, a party who fails to object below to affidavits and exhibits offered in support of a motion for summary judgment waives the right to challenge their admissibility on appeal. Price v. AIG Hawai'i Ins. Co., 107 Hawai'i 106, 112, 111 P.3d 1, 7 (2005) ("[C]hallenges to such papers [relating to summary judgment motions] raised for the first time on appeal are waived absent plain error.").

Here, Medina's opposition to the Zippy's MSJ did not include any objections to Goya's declaration or referenced exhibits. In fact, Medina did not challenge any of the affidavits or exhibits submitted by Zippy's, even though she had the opportunity and the incentive to do so. See Querubin v. Thronas, 107 Hawai'i 48, 61 n.5, 109 P.3d 689, 702 n.5 (2005) (holding that the appellants failed to preserve any objection to the admissibility of the attachments to a motion for summary judgment even though they had the opportunity and incentive to raise any objections). Having failed to object, Medina waived her challenge to Goya's declaration on appeal and the circuit court did not plainly err in relying upon Goya's declaration to grant summary judgment in favor of Zippy's. See Price, 107 Hawai'i at 111, 111 P.3d at 6 (holding that an appellant waived his challenge to the admissibility of evidence offered in support of a motion for summary judgment where the appellant challenged the admissibility of depositions submitted in support of the motion for the first time on appeal and did not present an argument as to why the appellate court should have overlooked the failure to object).

**B. Summary Judgment**

Medina argues that the circuit court erred in granting the Zippy's MSJ because it did not view the evidence in the light most favorable to Medina.

The HWPA is codified in Hawaii Revised Statutes (**HRS**) § 378-62 (2015 Repl.), which provides in relevant part:

5

§378-62 Discharge of, threats to, or discrimination against employee for reporting violations of law. An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]

In order to prevail on an HWPA claim, an employee must prove the following: (1) the employee engaged in protected conduct under the HWPA, (2) the employer took an adverse employment action against the employee, and (3) a causal connection exists between the employee's protected conduct and the employer's adverse action (i.e., the employer's action was taken because the employee engaged in protected conduct; the employee has the burden of showing that the protected conduct was a "substantial or motivating factor" in the employer's decision to take the employment action). See Crosby v. Dept. of State Dep't of Budget & Fin., 76 Hawai'i 332, 341-42, 876 P.2d 1300, 1309-10 (1994); see also Tagupa v. VIPdesk, Inc., 125 F.Supp.3d 1108, 1119 (D. Haw. 2015).

The employer carries the burden of negating causation only after the employee first demonstrates a causal connection. Crosby, 76 Hawai'i at 342, 876 P.2d at 1310. Therefore, "[o]nce the employee shows that the employer's disapproval of his [or her protected activity] played a role in the employer's action against him or her, the employer can defend affirmatively by showing that the termination would have occurred regardless of the protected activity." Id. (citation, internal quotation marks and brackets in original omitted; emphasis added) (applying federal case law on employees' rights under the National Labor Relations Act to the HWPA). "[A]n aggrieved employee always retains the ultimate burden of proof in a retaliatory discharge case" and, therefore, the employer's burden is a burden of production, not a burden of persuasion. Id.

"[I]f the employer rebuts the prima facie case, the burden reverts to the [employee] to demonstrate that the [employer's] proffered reasons were 'pretextual.'" Adams, 135 Hawai'i at 14, 346 P.3d at 83 (quoting Shoppe, 94 Haw. at 379, 14 P.3d at 1060) (describing the burden-shifting analysis that Hawai'i court's use when analyzing a claim of age discrimination that relies on circumstantial evidence); Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001) ("If the [employer] articulates such a reason [for terminating the employee], the [employee] bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive."); see also Crosby, 76 Hawai'i at 342, 876 P.2d at 1310 (concluding that the HWPA follows the same burden of proof used in "traditional labor management relations discharge cases").

In this case, even assuming arguendo that Medina established a prima facie claim, Zippy's produced sufficient evidence to establish that it would have terminated Medina regardless of her alleged protected activity. In support of its summary judgment motion, Zippy's put forth evidence showing that on January 23 and 31, 2010, Medina and another Zippy's employee, Nakila, had a verbal altercation at work. Without apportioning blame, Zippy's informed both Medina and Nakila that another incident could result in their termination. The Employee/Manager Conference Report from Zippy's dated January 29, 2010 indicated in the section entitled "Corrective Action or Desired Behavior" that Medina needs to be able to resolve conflict in a professional manner, control her emotions without engaging in shouting matches, and comply with the company policies of Zippy's.[3] The report indicated that Medina's "[n]ext incident will result in suspension up to termination depending on severity." An addendum to the January 29, 2010 report, dated February 9, 2010, stated, "[Goya m]et with [Medina] and [Nakila] on 2/9/10 to discuss further action if any further 'outburst',

_____

[3]     We note that Nakila's Employee/Manager Conference Report, also dated January 29, 2010 regarding the incident, listed the same corrective actions and the same warning to Nakila that the "[n]ext incident will result in suspension up to termination depending on severity."

altercation, etc. occur at the worksite. Both employees were notified that this is considered a last chance warning that next incident will result in immediate termination."

Despite the warning from Zippy's, on October 21, 2010, Medina had a verbal altercation at work with Olivera, the shift leader responsible for seating new customers. During her deposition, Medina admitted to erasing a seating chart used at Zippy's because she believed Olivera gave her a disproportionately heavy workload. Medina acknowledged that her decision to erase the seating chart did not conform to the normal procedure for erasing the chart, but instead was motivated by her frustration with Olivera:

> Q. Before you erased it, did you go to [Ronald Rabago (**Rabago**)], assistant manager for Zippy's] and say, hey, I'm gonna erase the board and set it back?
>
> A [Medina]. No, because we just do it. I've done it every day. We do it all the time. That was, like a procedure we did.
>
> Q. So when during the day would you erase the board?
>
> A. When I looked at the board and I was sitting people and we all seemed like the lines was almost equal, you erase it down and then we start all over again. 'Cause the board could only [g]o [s]o far across.
>
> Q. When you erased it on that day, though, [Olivera] still showed more tables than you; is that right?
>
> A. Yes.
>
> Q. So you weren't erasing it because you were even. <u>You were erasing it because you thought [Olivera] had not put what was correct on the board?</u>
>
> A. <u>Yes.</u>
>
> Q. Before you did that, you didn't talk to [Olivera] about erasing the board?
>
> A. No, because I just went there 'cause I knew she was lying and I felt like I'm gonna go check, you know? So I wen' check. . . .
>
> Q. Did you say to [Rabago], "You know, I'm gonna erase the board because it's not even"?
>
> A. No, because he should have went up there when I talked to him and looked [at] it and done something about it.
>
> Q. You said [Rabago] had come to you and said you and [Olivera] to stop this or I'm gonna write you both up --
>
> A. Yeah.

Q. Now after he said that to you, did you think, well, maybe I shouldn't have erased the board because that's going to make it worse?

A. No, because it was a procedure I always did. I didn't think anything was wrong with it.

Q. But the other times you did it is when whoever on the board was roughly even and that you were going to start over; is that right?

A. Yes.

Q. <u>This was a different situation?</u>

A. <u>Yes, because she was obviously trying to give me more tables after that. . . . . I didn't wanna play that game with her.</u>

(Emphases added.) As a result of Medina's prior February 9, 2010 warning and the October 10, 2010 incident, Zippy's decided to terminate Medina's employment.[4] Based on its proffered evidence, Zippy's satisfied its burden to demonstrate that its termination of Medina would have occurred regardless of her alleged protected activity. <u>See</u> <u>Crosby</u>, 76 Hawai'i at 342, 876 P.2d at 1310.

Without citing any evidence to support her allegation, Medina's opposition to the Zippy's MSJ alleged that "[Zippy's] wrongfully terminated [Medina] on a pretext that she created a 'hostile work environment.'" Medina's allegation is insufficient to create a genuine issue of material fact worthy for trial. Viewing the evidence in the light most favorable to Medina, Medina still failed to demonstrate that the employment action by Zippy's was a pretext for discrimination or that it was taken because of Medina's alleged protected activity. <u>See</u> <u>Adams</u>, 135 Hawai'i at 14, 346 P.3d at 83 ("A plaintiff may establish pretext by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence." (citations, internal quotation marks and ellipsis omitted)). Therefore, the circuit court did not err in concluding that Zippy's was entitled

---

[4] We note that both Medina and Olivera were disciplined as a result of the October 10, 2010 incident. Olivera's Employee/Manager Conference Report dated November 1, 2010, states that she received a week suspension and a warning that the "next incident is 2 weeks suspension or termination depending on the situation."

to summary judgment as a matter of law.  See id. at 12, 346 P.3d at 81.

## IV.  CONCLUSION

Therefore, the "Final Judgment" entered on October 29, 2014 in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, November 15, 2016.

On the briefs:

Charles H. Brower
for Plaintiff-Appellant.

Richard M. Rand
Eileen C. Zorc
(Marr Jones & Wang)
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

10